IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MURRAY H. KIMMEL, et al.          :          CIVIL ACTION
                                  :
          v.                      :
                                  :
PHELAN HALLINAN &                 :
SCHMIEG, PC, et al.               :          NO. 11-2596

MEMORANDUM

Dalzell, J.                                  February 28, 2012

Plaintiffs Murray H. and Dolores T. Kimmel

(collectively, "the Kimmels") bring suit against defendants

Phelan Hallinan & Schmieg, PC ("PHS"), Deutsche Bank National

Trust Company ("Deutsche Bank"), and America's Servicing Co.

("ASC"), alleging federal law violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.,

and the Racketeering Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961, et seq., as well as state law

violations of the Pennsylvania Fair Credit Extension Uniformities

Act ("FCEUA"), 73 Pa. Cons. Stat. § 2270.1, et seq., the

Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, et seq., and common law

claims for fraud and negligent misrepresentation.  The Kimmels'

suit arises out of efforts by defendants to collect a debt the

Kimmels allegedly owed on a mortgage and note for a property

located in Brigantine, New Jersey.

Defendant PHS filed a motion to dismiss this action for improper venue, to which ASC and Deutsche Bank added a motion to dismiss for failure to state a claim that PHS later joined.[1]  The Kimmels responded to these motions and we have entertained supplemental briefing so that the motions are now ripe for disposition.  For the reasons described below, we will deny PHS's motion to dismiss for improper venue and grant in part ASC and Deutsche Bank's motion to dismiss for failure to state a claim. We will afford the Kimmels a limited opportunity to amend their complaint to remedy some of the deficiencies we identify here.

## I.   **Factual Background**

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6),[2] we must "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'"  Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  We may "'consider only allegations in the complaint,

---

[1] See PHS's Supplemental Brief (docket no. 10) at 2, note 1.

[2] We rehearse the standard applicable to a motion to dismiss for improper venue in Section II.A below.

exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)), where a document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis and internal quotation marks omitted). As our Court of Appeals has explained, this means that we may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

According to the Kimmels, they both reside in Huntington Valley, Pennsylvania. PHS, which handles debt collection matters, has its headquarters in New Jersey. Deutsche Bank and ASC handle debt collection matters at their headquarters in South Carolina. Pls.' Compl. ¶¶ 6, 8-10. The Kimmels allege, conclusorily, that they are "consumers" and the defendants are "debt collectors" under the FDCPA, and that the defendants sought to collect "consumer debt" from the Kimmels. Id. ¶¶ 7, 11.

The Kimmels claim that on October 19, 2008, ASC sent them a notice of intention to foreclose in which it represented that it held a conventional mortgage on real property the plaintiffs owned in Brigantine, New Jersey (the "property"). <u>Id.</u> ¶¶ 26, 29, 40.  The Kimmels state that they were unaware, however, of any such mortgage held by ASC as at that time only WMC Mortgage Corp. ("WMC") held a mortgage on the property, and Atlantic County, New Jersey, records allegedly do not reflect that ASC ever held a mortgage on the property. <u>Id.</u> ¶¶ 30-31, 35. ASC's notice stated that it was attempting to collect a debt the Kimmels owed, and that it would initiate a foreclosure action unless the Kimmels cured the alleged default and brought their account current.  Notwithstanding this threat, ASC has never instituted a foreclosure action against the plaintiffs. <u>Id.</u> ¶¶ 32-34.  ASC's letter referred to a different loan number than that assigned to the note and mortgage WMC held on the property, and the Kimmels were not aware of any mortgage and note relating to their property bearing the number ASC listed. <u>Id.</u> ¶¶ 36-37. According to the Kimmels, "upon receipt of this letter . . . Plaintiffs grew very worried they were becoming the victims of a scam, potentially targeting senior citizens." <u>Id.</u> ¶ 38.

The Kimmels aver that in December of 2008, PHS and Deutsche Bank filed a complaint in foreclosure against them in the Chancery Division of the Superior Court of New Jersey for Atlantic County seeking to collect an allegedly defaulted debt owed on a mortgage and note for the property. Id. ¶¶ 13-15. In their complaint, PHS and Deutsche Bank pled that WMC had assigned the mortgage and note on the property to Deutsche Bank on December 15, 2008, so that Deutsche Bank was now the owner and/or holder of the mortgage and note and certain amounts were owed to it as the mortgagee. Id. ¶¶ 19-20. The Kimmels maintain that (1) WMC was the mortgagee on December 16, 2008, (2) no assignment from WMC to Deutsche Bank had been recorded as of that date, and (3) such assignment was filed only on January 12, 2009.[3] Id. ¶¶ 18, 20-21. PHS and Deutsche Bank also averred in their complaint that "'[n]otice was sent in compliance with the fair foreclosure act more than 31 days prior to the filing of the within complaint,'" though neither PHS nor Deutsche Bank sent such a notice prior to instituting proceedings. Id. ¶¶ 25-26 (quoting PHS/Deutsche Complaint at 5). According to the Kimmels, they

---

[3] PHS and Deutsche Bank's complaint did state that "[t]he assignment is in the process of being recorded." Ex. A to Pl.'s Compl. ("PHS/Deutsche Complaint") at 2.

found this complaint sufficiently confusing that they were forced to retain counsel.  Id. ¶¶ 16-17.

As for the January 12, 2009 assignment, it was signed by "'Judith T. Romano' as 'Assistant Secretary and Vice President' of Mortgage Electronic Registration Systems Inc. as a nominee for WMC Mortgage Corp. its successors and assigns," id. ¶ 22 (quoting Ex. B to Pl.'s Compl.), though plaintiffs allege that Romano did not actually occupy this position and was instead merely an attorney with PHS.  Id. ¶ 23.

On January 29, 2009, PHS sent two letters to the Kimmels with conflicting information.  Though both letters stated that plaintiffs owed legal fees and costs of $1,931.68 and additional fees of $90.00 (albeit without describing how those amounts had accrued), one letter identified late charges amounting to $855.68 and an escrow balance of $0.00, while the other described late charges in the amount of $641.76 and an escrow balance of $903.03.  Id. ¶¶ 46-48.  The loan number referred to in each letter was not that associated with the Kimmels' mortgage and note with WMC, and the letters required that payments be made to ASC.  Id. ¶¶ 49-50.

On or about May 5, 2010, Deutsche Bank filed for summary judgment in its foreclosure action against the Kimmels,

relying on a note and mortgage plaintiffs allegedly signed that the Kimmels claim include certain discrepancies regarding the dates of signing and notarization.  Id. ¶¶ 51-54.  Deutsche Bank also relied upon a "'Certification of Amount Due and Non-Military Service'" by Herman John Kennerty, the Vice-President for Loan Documentation for Wells Fargo Bank N.A., id. ¶ 58 (quoting Ex. D to Ex. F to Pl.'s Compl. ("Deutsche Bank's MSJ")).  Kennerty's certification, however, did not set forth the personal knowledge he had of plaintiffs' loan and lacked certain supporting documentation.  Id. ¶¶ 59-64.  Despite ASC's January 29, 2009 letters to the Kimmels, Deutsche Bank's motion suggested that no late charges were owed and that late charges would not accrue beyond the date of the complaint's filing.  Id. ¶¶ 55-56.  On June 25, 2010, the Superior Court denied the motion for summary judgment, and in September of 2010 PHS and Deutsche Bank's complaint was dismissed without prejudice.  Id. ¶¶ 67-68.

On October 6, 2010, PHS sent a letter on behalf of Deutsche Bank and ASC to the Kimmels' attorney that set forth a payoff balance.  That letter referenced a different account number than that corresponding to the mortgage plaintiffs had taken with WMC, id. ¶¶ 69-70, and showed that plaintiffs owed $4,353.56 in late charges and $1,331.25 for "'Property

7

Inspections/BPO,'" though no explanation was provided for how these charges had accrued.  Id. ¶¶ 71-73 (quoting Ex. J to Pl.'s Compl.).

On October 7, 2010, PHS sent a letter to the Kimmels on behalf of ASC and Deutsche Bank entitled "'Notice of Intent to Foreclose,'" id. ¶ 75 (quoting Ex. K to Pl.'s Compl.).  This letter stated that although Deutsche Bank held a mortgage on the property, payments should be made to ASC.  Id. ¶ 76.  The letter repeated that plaintiffs owed $4,532.30 in late fees and $1,331.25 in "'other charges'" to "'secure property,'" id. ¶ 78 (quoting Ex. K to Pl.'s Compl.), but the October 6, 2010 letter had stated that these charges were for "'Property Inspections/ BPO,'" id. ¶ 78 (quoting Ex. J to Pl.'s Compl.), and Kennerty's certification had set forth charges of only $521.25 for "'advances to winterize and/or secure property.'"  Id. ¶ 79 (quoting Ex. H to Pl.'s Compl.).  PHS's letter threatened legal action if the default amount was not paid within thirty-three days.  Id. ¶ 81.

On November 15, 2010, Deutsche Bank and PHS filed another foreclosure complaint against the Kimmels in the Chancery Division of the Superior Court of New Jersey for Atlantic County. Id. ¶ 82.  The complaint referenced a note with an initial annual

interest rate of 10.75%, but the Kimmels contend that they never took out a mortgage at that rate, and Deutsche Bank and PHS failed to attach any documentation that would permit the Kimmels to determine if this was in fact their note.  Id. ¶¶ 83-84.

## II.  **Analysis**

The Supreme Court has explained that "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), leading a reviewing court to engage in a "context-specific" inquiry that "requires [it] to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).[4]  Under this standard, a

---

[4] The Kimmels observe that "[d]efendants, in their Motion to Dismiss, attempt to focus this Court's attention on the convoluted opinions of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  Twombly involved a complex antitrust matter alleging parallel business activities . . . while Iqbal concerned one of our Nation's most pressing national security interests."  Pls.' Mem. of L. in Resp. to Deutsche Bank & ASC's Mot. Dismiss ("Pl.'s Mem. II") at 39. Notwithstanding plaintiffs' brave attempt to explain away Twombly and Iqbal, they remain the seminal cases setting forth the standard for motions to dismiss for failure to state a claim. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly . . . continuing with our opinion in Phillips, supra, and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal . . . pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more
(continued...)

pleading may not simply offer "labels and conclusions," Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
129 S. Ct. at 1949.  Rather, "[f]actual allegations must be
enough to raise a right to relief above the speculative level,"
Twombly, 550 U.S. at 555, which is to say that there must be
"more than a sheer possibility that a defendant has acted
unlawfully." Iqbal, 129 S. Ct. at 1949.  Essentially, a
plaintiff must provide "enough facts to raise a reasonable
expectation that discovery will reveal evidence of the necessary
element" of the cause of action.  Phillips v. County of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation
marks omitted).

        Defendants advance four arguments under Rule 12(b)(6),
to wit: (1) this matter should be dismissed pursuant to New
Jersey's Entire Controversy Doctrine[5]; (2) the applicable statute

---

[4] (...continued)
than the possibility of relief to survive a motion to dismiss.").

        [5] As our Court of Appeals has explained, "such an
affirmative defense [i.e., the Entire Controversy Doctrine] could
properly be the grounds for a motion to dismiss for failure to
state a claim upon which relief can be granted pursuant to FED.
                                              (continued...)

of limitations bars the Kimmels' FDCPA, FCEUA, fraud, and negligent misrepresentation claims; (3) the Kimmels have failed to state a claim under the FDCPA; and (4) the Kimmels have failed to allege justifiable reliance, as needed to support claims under RICO, UTPCPL, and the common law of fraud and negligent misrepresentation.

Before examining these arguments, we will first consider PHS's motion to dismiss for improper venue under Rule 12(b)(3), which employs a somewhat different standard.

### A.    PHS's Motion to Dismiss for Improper Venue

Fed. R. Civ. P. 12(b)(3) provides that "a party may assert the following defenses by motion: . . . (3) improper venue."  In ruling on a Rule 12(b)(3) motion, "[w]e accept as

---

[5] (...continued)
R. CIV. P. 12(b)(6)."  Rycoline Prods., Inc. v. C & W Unltd., 109 F.3d 883, 886 (3d Cir. 1997).  However, "if a statute of limitations 'bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'  This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine."  Id. (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).  We will thus consider only allegations in the Kimmels' complaint and undisputed documents relied upon therein in determining whether the entire controversy doctrine bars their claims.

true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." Bockman v. First Am. Mktg. Corp., 2012 WL 171972, at *1 n.1 (3d Cir. 2012). As our Court of Appeals has explained, "the defendant should ordinarily bear the burden of showing improper venue in connection with a motion to dismiss." Myers v. Am. Dental Ass'n, 695 F.2d 716, 725 (3d Cir. 1982).

In its motion, PHS explains that "[a]s is set forth in the accompanying certification of Vladimir V. Palma, Esq., a partner in PHS-NJ, PHS-NJ is a New Jersey professional corporation which handles matters exclusively in New Jersey and whose only offices are in New Jersey." PHS's Br. in Supp. of Mot. Dismiss ("PHS's Br.") at 1. According to PHS, it "has no contacts with Pennsylvania, and most assuredly does not reside in Pennsylvania," and "[o]ne can scour the complaint looking for any reference to PHS-NJ even doing anything in Pennsylvania, but to no avail." Id. at 3. PHS further avers that "the real property in question is located in New Jersey, as are the mortgage and the foreclosure action, and . . . the putative causes of action are based on events alleged to have occurred or originated in New Jersey." Id. at 4. PHS thus concludes that "venue lies in New

12

Jersey" and "dismissal is an appropriate remedy here, where the impropriety of the venue is manifest."  Id.

The Kimmels respond that PHS did have at least five contacts with Pennsylvania.  They are[6]: (1) "[t]he Notice of Intention to Foreclose upon which Defendant PHS relied in paragraph 9 of its complaint . . . was sent to Plaintiffs' Pennsylvania address by Defendant America's Servicing Co.," Pls.' Mem. I at 2; (2) "[t]his complaint was served on Plaintiffs, as set forth in the Summons prepared by Defendant PHS, at their residence in Huntington Valley, Pennsylvania," id.; (3) "PHS filed an Assignment of the mortgage to Deutsche" that "was signed by one of its own attorneys, Judith T. Romano, in Philadelphia, Pennsylvania," id.; (4) "PHS also sent correspondence to

---

[6] While none of these allegations is contained in the complaint, each is evidenced by documents the complaint relied upon, so that we will consider them in ruling on PHS's motion to dismiss.  In addition to these allegations, the Kimmels assert that "PHS explicitly addressed many of its [dunning] letters to Plaintiffs to their Huntington Valley, Pennsylvania residence," Pls.' Mem. in Resp. to PHS's Mot. Dismiss ("Pls.' Mem. I") at 6 (citing Exs. 2 and 4 to Pls.' Compl.), and that "PHS's website also reflects that it conducts business in both Pennsylvania, with an office in Philadelphia, and in New Jersey."  Id. at 7. The former statement is not supported by the exhibits to which plaintiffs point, which are devoid of recipient addresses.  The latter statement is neither alleged in the complaint nor supported by documents relied upon in the complaint.  We will thus ignore both statements.

Plaintiffs" that "reflected conspicuously at the top that it

represented 'Lenders in Pennsylvania and New Jersey,'" id.; and

(5) "[i]n its Motion for Summary Judgment, Defendant PHS relied

upon correspondence sent from Defendant ASC to Plaintiffs . . .

at their residence in Pennsylvania." Id. at 3.  Plaintiffs thus

argue that PHS "has availed itself to the Eastern District of

Pennsylvania," id. at 6, and that venue is proper here.

Under 28 U.S.C. § 1391(b),

A civil action may be brought in --

(1)  a judicial district in which any
     defendant resides, if all defendants are
     residents of the State in which the
     district is located;

(2)  a judicial district in which a
     substantial part of the events or
     omissions giving rise to the claim
     occurred, or a substantial part of
     property that is the subject of the
     action is situated; or

(3)  if there is no district in which an
     action may otherwise be brought as
     provided in this section, any judicial
     district in which any defendant is
     subject to the court's personal
     jurisdiction with respect to such
     action.

Section 1391(d) further provides that

For purposes of venue under this chapter, in
a State which has more than one judicial
district and in which a defendant that is a

14

> corporation is subject to personal
> jurisdiction at the time an action is
> commenced, such corporation shall be deemed
> to reside in any district in that State
> within which its contacts would be sufficient
> to subject it to personal jurisdiction if
> that district were a separate State, and, if
> there is no such district, the corporation
> shall be deemed to reside in the district
> within which it has the most significant
> contacts.

As Judge Baylson has explained, "Pennsylvania has more than one

district.  Therefore, to determine if venue is proper in this

Court, one must analyze whether, treating the Eastern District of

Pennsylvania as though it were its own state, the Eastern

District of Pennsylvania could exercise personal jurisdiction

over [the defendant]."  Dellget v. Wolpoff & Abramson, L.L.P.,

2007 WL 4142769, at *2 (E.D. Pa. 2007).  Our Court of Appeals has

summarized the personal jurisdiction inquiry as follows:

> In determining whether there is specific
> jurisdiction, we undertake a three-part
> inquiry.  First, the defendant must have
> purposefully directed its activities at the
> forum.  Second, the litigation must arise out
> of or relate to at least one of those
> activities.  And third, if the first two
> requirements have been met, a court may
> consider whether the exercise of jurisdiction
> otherwise comports with fair play and
> substantial justice.

D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,
566 F.3d 94, 102 (3d Cir. 2009) (brackets, quotation marks, and
internal citations omitted).

        In this case, three of the five contacts that the
Kimmels point to do not support personal jurisdiction over PHS in
this District: PHS cannot be said to have "purposefully directed
its activities" toward this forum merely because it twice relied
upon communications that another party -- ASC -- directed here,
or because its letterhead included the statement "Representing
Lenders in Pennsylvania and New Jersey."  But PHS did
purposefully direct its activities toward this District by
serving a complaint upon the Kimmels in Huntington Valley,
Pennsylvania, and by executing in Philadelphia the assignment of
a mortgage the Kimmels executed.  Furthermore, these activities
give rise (in part) to the Kimmels' claims under federal and
state law and were sufficiently substantial as to make the
exercise of jurisdiction "comport with fair play and substantial
justice."  Id. at 102.  Based on the allegations in plaintiffs'
complaint and supporting documents, we are satisfied that if this
District were a State, we would have personal jurisdiction over

PHS.  We will consequently deny PHS's motion to dismiss for

improper venue pursuant to Rule 12(b)(3).[7]

### B.   New Jersey's Entire Controversy Doctrine

Deutsche Bank and ASC explain in their motion to

dismiss, Deutsche Bank & ASC's Mem. in Supp. of Mot. Dismiss

("Deutsche/ASC's Mem.") at 5-6, that

> Each of Plaintiffs' causes of action is based
> upon or arises out of Deutsche Bank's and
> ASC's alleged wrongful conduct in connection
> with the foreclosure actions in New Jersey
> state court.  Because Plaintiffs were aware
> of their claims at the time of the
> foreclosure actions and the claims are
> germane to those actions, Plaintiffs are
> barred from asserting them in this action
> under New Jersey's entire controversy
> doctrine and their Complaint must be
> dismissed in its entirety with prejudice.

PHS joins in Deutsche Bank and ASC's motion to dismiss.  PHS's

Suppl. Br. in Supp. of Mot. Dismiss ("PHS's Suppl. Br.") at 2

n.1.

The Kimmels respond that the entire controversy

doctrine does not apply here because "[t]he facts Defendant

_____

[7] We stop short of finding venue here to be proper
since we have not been asked to determine whether Deutsche Bank
and ASC are present here as § 1391(b)(1) requires, and have not
considered whether venue is appropriate here under § 1391(b)(2),
as the Kimmels alternatively contend.

17

Deutsche needs [sic] to prove on behalf of its client, Deutsche,

in the state-court foreclosure action are not the same facts

Plaintiffs have to prove to satisfy their claims . . . growing

out of Defendants Deutsche and ASC's deceptive, harassing and

unfair collection practices." Pls.' Mem. II at 7; see also Pls.'

Br. in Resp. to PHS's Suppl. Br. ("Pls.' Mem. III") at 5 (same

regarding claims against PHS).  The Kimmels further aver that the

doctrine is inapposite because "the Third Circuit has invariable

[sic] held that the Entire Controversy Doctrine does not apply

when multiple cases involving the same or related claims are

pending simultaneously."  Pls.' Mem. II at 8 (internal quotation

marks omitted).

 In response, PHS recently sent us a letter in which it

claims that

> [T]he New Jersey Superior Court foreclosure
> action, Deutsche Bank, Trustee v. Kimmel,
> (No. 56519-10, Chancery, Atlantic County),
> which was pending when the motions to dismiss
> were filed in this Court, was recently
> dismissed without prejudice to refiling a new
> foreclosure case at any time provided that
> certain discovery is first provided to
> Kimmel.  (It is anticipated that foreclosure
> litigation will resume shortly.)

PHS's Letter, Jan. 11, 2012 ("PHS's Letter") at 1.

Our Court of Appeals has observed that "[a]lthough sometimes approached as if they belong to two different families, New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives.  The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." Rycoline, 109 F.3d at 886.  The doctrine "is an extremely robust claim preclusion device that requires adversaries to join all possible claims[8] stemming from an event or series of events in one suit." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 (3d Cir. 1999).  According to the New Jersey Supreme Court, the doctrine's purposes are threefold: "(1) the need for complete and final

_____

[8] The doctrine appears to have evolved over the years, particularly with respect to the requirement that parties join claims against adversaries not already present in the original litigation.  Thus, the New Jersey Supreme Court explained in 1995 that "[o]riginally, the doctrine mandated joinder of only those claims arising from the same overall transaction involving the parties already named in the lawsuit. . . . In 1989, however, this Court extended the entire controversy doctrine to mandate joinder of all parties with a material interest, one that can affect or be affected by the judicial outcome of a legal controversy." DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995) (internal quotation marks omitted).  In 1999, our Court of Appeals observed that "[u]ntil quite recently the entire controversy doctrine required party as well as claim joinder. The party joinder aspect of the doctrine, the focus of the lion's share of the criticism, has now been eliminated." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 135 n.1 (3d Cir. 1999).

disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio, 662 A.2d at 502.

The entire controversy doctrine is codified at New Jersey Rule of Court 4:30A, which provides that

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

Leaving aside the exception for foreclosure actions -- to which we will turn in a moment -- "[i]n determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." DiTrolio, 662 A.2d at 502. However, "[t]he entire controversy doctrine does not require commonality of legal issues. Rather, the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." Id. at 504. Since "[t]he polestar of the application of the rule

20

is judicial fairness," id. at 505 (quotation marks omitted), the

doctrine "does not apply to unknown or unaccrued claims," id..

Instead, a court should "focus[] on the litigation posture of the

respective parties and whether all of their claims and defenses

could be most soundly and appropriately litigated and disposed of

in a single comprehensive adjudication."  Id. at 507.

Furthermore, "[a]s an equitable doctrine, [the doctrine's]

application is flexible, with a case-by-case appreciation for

fairness to the parties", Paramount Aviation, 178 F.3d at 137.

> Rule 4:64-5, for its part, provides that
>
>> Unless the court otherwise orders on notice
>> and for good cause shown, claims for
>> foreclosure of mortgages shall not be joined
>> with non-germane claims against the mortgagor
>> or other persons liable on the debt.  Only
>> germane counterclaims and cross-claims may be
>> pleaded in foreclosure actions without leave
>> of court. . . .

In construing an earlier version of this rule, the Superior Court

of New Jersey explained in 1975 that "[t]he use of the word

'germane' in the language of the rule undoubtedly was intended to

limit counterclaims in foreclosure actions to claims arising out

of the mortgage transaction which is the subject matter of the

foreclosure action."  Leisure Tech.-Ne., Inc. v. Klingbeil

Holding Co., 349 A.2d 96, 98 (N.J. Super. 1975).  But the court

21

also noted that the "doctrine to which we have referred above requires a liberal rather than a narrow approach to the question of what issues are 'germane.'"   Id. at 99.

The parties have not briefed us on the appropriate law they believe should apply to this case.   The Kimmels apparently assume that Pennsylvania law applies.   Deutsche Bank and ASC note only that "[w]ith respect to the elements of the common law claims, because there is no actual conflict between Pennsylvania and New Jersey law, the Court need not engage in a choice-of-law analysis," Deutsche/ASC's Mem. at 8 n.7 -- thus forgetting that the Kimmels have also asserted claims under Pennsylvania's UTPCPL[9] and FCEUA.   Until we receive briefing from the parties to the contrary, we will assume that Pennsylvania law applies.   We can determine whether the entire controversy doctrine applies to this matter without reaching a conclusion as to the substantive law to apply more generally.   As our Court of Appeals has explained, "federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion

---

[9] Deutsche Bank and ASC note that "it appears the Plaintiffs are attempting to avail themselves of Pennsylvania law . . . . and have asserted a claim under Pennsylvania's UTPCPL," Deutsche/ASC's Mem. at 8, but provide us with no analysis of whether this choice of law is appropriate.

law of the issuing court."  Paramount Aviation, 178 F.3d at 135.

Since defendants seek to preclude the Kimmels' claims based upon

proceedings before the Chancery Division of the New Jersey

Superior Court, we will entertain defendants' arguments as to the

entire controversy doctrine's application to this case.

The Kimmels spill much ink attempting to convince us

that their claims in this suit do not constitute part of the same

controversy as the claims in the suits Deutsche Bank and PHS

allegedly filed against them in the New Jersey Chancery Division

in December of 2008 and November of 2010.  They largely ignore

the special test -- based on whether claims are "germane" -- that

should be applied to foreclosure actions under the entire

controversy doctrine.  Thus, the Kimmels aver that

> In the foreclosure actions, the facts alleged
> on behalf of Defendant Deutsche were as
> follows: Plaintiffs executed to WMC Mortgage
> Corp. a Note; Plaintiffs executed to MERS[10] a
> mortgage; and Plaintiffs defaulted in making
> payments.  The facts Defendant Deutsche[11]
> needs to prove on behalf of its client,
> Deutsche, in the state-court foreclosure
> action are not the same facts Plaintiffs have
> to prove to satisfy their claims under the

---

[10] This appears to be an error, as no allegation has
been made in this action respecting any entity called "MERS".

[11] This appears to be another error.  The Kimmels
likely intended to refer to "Defendant PHS" here.

> FDCPA, the FCEUA, the UTCPL [sic], RICO,
> fraud, and negligent misrepresentation,
> growing out of Defendants Deutsche and ASC's
> deceptive, harassing and unfair collection
> practices.  Thus, the two independent sets of
> facts cannot be said to arise from a 'core
> set of facts' discussed in DiTrolio.

Pls.' Mem. II at 7 (citations omitted).  Notwithstanding the

Kimmels' (largely conclusory) reasoning, it appears to us that

their claims here do form part of the same controversy as the

claims defendants have asserted in the New Jersey courts and, in

fact, are "germane" under Rule 4:64-5 and Leisure Technology.

    As that decision explained, claims are "germane" to the

extent they "aris[e] out of the mortgage transaction which is the

subject matter of the foreclosure action."  Leisure Technology,

349 A.2d at 98.  The Kimmels appear to believe that claims

predicated upon a debt collector's allegedly deceptive

communications cannot arise out of the same set of facts as a

mortgage foreclosure action, arguing that "[p]ractices utilized

by a debt collector in seeking to collect a debt can not be said

to be the same facts as defaulting on a mortgage and note."

Pls.' Mem. I at 13.  Decisions from the District of New Jersey

make plain that this is not true.  See, e.g., Venner v. Bank of

Am., 2009 WL 1416043 (D.N.J. 2009) (Simandle, J.) (applying

entire controversy doctrine to bar FDCPA claim based upon

24

defendant's alleged demand for excessive mortgage fees following foreclosure); <u>Oliver v. Am. Home Mortg. Servicing, Inc.</u>, 2009 WL 4129043 (D.N.J. 2009) (Hillman, J.) (applying entire controversy doctrine to bar FDCPA claim based upon defendant's alleged demand for excessive reinstatement fees during foreclosure proceedings).

      In this case, all of the Kimmels' claims essentially arise from the defendants' communications in which they represented that the Kimmels (1) owed certain amounts (2) under a mortgage bearing certain loan numbers (3) to certain entities. The Kimmels allege that these representations were deceptive and confusing.  Since it is the underlying mortgage transactions here that determine (1) whether the Kimmels owe any amounts, (2) the loan numbers associated with these debts, and (3) to whom these amounts are owed -- and hence whether the communications at issue were indeed deceptive -- it is impossible to conclude that the Kimmels' claims do not "aris[e] out of the mortgage transaction which is the subject matter of the foreclosure action." <u>Leisure Technology</u>, 349 A.2d at 98.  Indeed, in <u>Coleman v. Chase Home Fin.</u>, 446 Fed. Appx. 469, 472 (3d Cir. 2011), which featured an analogous situation where a plaintiff asserted claims for misrepresentation and unfair and deceptive assessment and collection of fees, our Court of Appeals noted that

25

> Here, Coleman's claims arose directly out of
> a reinstatement quote that was provided to
> her as an alternative to a foreclosure sale,
> and the excessive fees allegedly charged by
> Chase would not have been charged but for the
> foreclosure action.  Accordingly, Coleman's
> causes of action arose out of and were
> germane to the original foreclosure action.

While the Kimmels' claims appear to be germane to the controversy between the parties in New Jersey's Chancery Division, we cannot apply the entire controversy doctrine to foreclose these claims due to the status of the proceedings in that court.  Applying principles analogized from the doctrine of res judicata, our Court of Appeals has squarely held that "the Doctrine does not preclude the initiation of a second action while a prior action is still pending." Rycoline, 109 F.3d at 884.  As the Court explained, id. at 889,

> One of the prerequisites to the application
> of res judicata in New Jersey, as elsewhere,
> is the existence of a prior judgment that is
> final, valid, and on the merits. . . .
> Although the Entire Controversy Doctrine is
> not identical to traditional res judicata
> principles, defendants have pointed to no
> authority for the proposition that some
> measure of finality is any less necessary for
> application of the Doctrine than it is for
> application of res judicata.

District courts have thus asserted that to apply the entire controversy doctrine, "'the judgment in the prior action must be

26

valid, final, and on the merits.'"  Venner, 2009 WL 1416043, at
*2 (D.N.J. 2009) (quoting Stolinski v. Pennypacker, 2008 WL
5136945, at *13 (D.N.J. 2008) (quoting Watkins v. Resorts Int'l
Hotel & Casino, Inc., 591 A.2d 592, 599 (1991)).

    It is important to recall that Watkins and Stolinski
described the elements of claim preclusion under federal and New
Jersey law.  Though these courts noted the relationship between
res judicata and the entire controversy doctrine, they never
stated that the two doctrines were identical.  Stolinski, 2008 WL
5136945, at *13; Watkins, 591 A.2d at 598-99.  The requirement
that a prior judgment be "on the merits" appears to contradict
the New Jersey Supreme Court's conclusions in DiTrolio, 662 A.2d
at 507 (quoting Cogdell v. Hosp. Ctr. at Orange, 560 A.2d 1169,
1177 (N.J. 1989)), where it held that "mandatory joinder is
appropriate to further '[j]udicial economy and efficiency -- the
avoidance of waste and delay.' . . . [T]he consideration of
inefficiency and waste of judicial resources is not negated by
the fact that a prior action did not proceed to trial or a
judgment on the merits."  Whatever indeterminacy may exist as to
what precise degree of finality must exist to warrant application
of the entire controversy doctrine, it appears certain enough
that the action must have been resolved with some finality.

Based on the allegations in the Kimmels' complaint, and the undisputed documents relied upon therein, the actions PHS and Deutsche Bank instituted against the Kimmels in New Jersey do not display the requisite finality to warrant precluding the Kimmels' claims here.

According to plaintiffs' complaint, PHS and Deutsche Bank filed a complaint in foreclosure against them in the Superior Court of Atlantic County, Chancery Division, on December 16, 2008, Pls.' Compl. ¶ 14; Ex. A to Pls.' Compl. This complaint was dismissed without prejudice in September of 2010. Id. ¶ 68. Then, on November 15, 2010, PHS and Deutsche Bank filed another foreclosure complaint against the Kimmels in the same court. Id. ¶ 83; Ex. L to Pls.' Compl. According to PHS, that action "was recently dismissed without prejudice to refiling a new foreclosure case at any time provided that certain discovery is first provided to Kimmel. (It is anticipated that foreclosure litigation will resume shortly.)" PHS Letter at 1. PHS attaches to this letter an Order of Dismissal from the Superior Court of Atlantic County, Chancery Division. In that Order, the Honorable William C. Todd, III, on November 29, 2011, held that "Plaintiff's Complaint is dismissed without prejudice based upon plaintiff's repeated failure to comply with the

28

Court's prior Orders requiring the production of written discovery," and that "[t]he dismissal noted above is without prejudice to plaintiff's right to file a new Complaint for foreclosure at any time," provided that PHS first certifies that it has provided all court-ordered discovery and certifications. Ex. 1 to PHS's Letter ¶¶ 1-2.  The Kimmels appear to concede that PHS and Deutsche Bank's foreclosure suit had been dismissed in state court, see Pls.' Mem. III at 6, so that we may consider this fact as an undisputed matter of public record.

But even upon consideration of this recent development in the state court litigation, it remains true that these proceedings fail to demonstrate the degree of finality that Rycoline demands as a predicate for application of the entire controversy doctrine.  Judge Todd's Order makes clear that the action between the parties may resume at any time, and PHS itself suggests that litigation "will resume shortly."  Though the precise requirements a prior judgment must satisfy to apply the entire controversy doctrine may be unclear, there can be no doubt that -- despite Judge Todd's dismissal without prejudice -- the prior proceedings between PHS and Deutsche Bank and the Kimmels in state court have not been resolved with anything approaching the finality Rycoline demands.

29

PHS argues that the November 29, 2011 dismissal without prejudice brings the facts of this case close to those in Coleman.  In that case, our Court of Appeals noted that "the Chancery Court entered a judgment of dismissal without prejudice in the foreclosure action."  446 Fed. Appx. at 470.  But the procedural history of that case was complex and the Court "discuss[ed] the facts only to the extent necessary for the resolution of the issues raised on appeal," id., so that it is difficult to determine just how analogous the facts here are to those in Coleman.  Importantly, our Court of Appeals reported that "the foreclosure action became final on January 20, 2006," id. at 472, suggesting that the prior proceeding there had been resolved with a finality that readily distinguishes Coleman from this case.  In any event, Coleman is a non-precedential opinion. To the extent it conflicts with Rycoline's finality requirement -- and we do not believe that it does -- we must follow Rycoline.

Because the prior proceedings between the parties in New Jersey state court have not resulted in a final resolution, we decline to apply the entire controversy doctrine to preclude the Kimmels' claims in this action.

**C.**   **The Applicable Statutes of Limitations**

Deutsche Bank and ASC next argue that "because Plaintiffs were served no later than February 29, 2009" in the underlying state proceedings, Deutsche/ASC's Mem. at 9, "[p]laintiffs' claims against Deutsche Bank and ASC are barred by the FDCPA's one year statute of limitations." Id. at 10. They further assert that the Kimmels' "FCEUA, fraud and negligent misrepresentation claims . . . arose in 2008 when the Kimmels received the Notices," id. at 10-11, so that those claims are barred by the applicable two-year statute of limitations. Finally, Deutsche Bank and ASC suggest that "the Kimmels cannot allege a continuing violation of the FDCPA with respect to the foreclosure actions in order to bring their claims within the statute of limitations." Id. at 10.  Because these arguments fail comprehensively to address the Kimmels' allegations of wrongdoing or the complexities of the continuing violations doctrine, we decline to dismiss any claims on these bases.

To begin, the Kimmels have alleged that PHS, Deutsche Bank, and ASC committed a number of acts within the one- and two-year statute of limitations.  ASC and Deutsche Bank do not bother to consider these acts, instead pretending that the only actionable allegations in the Kimmels' complaint regard notices

31

sent or proceedings instituted in 2008 and 2009, and that plaintiffs' claims should be wholly dismissed as a result. It is certainly possible that claims based on acts that allegedly took place outside the statute of limitations period may be subject to dismissal. But we will not carry the burden for ASC and Deutsche Bank to identify <u>which</u> actions may have fallen outside the limitations period and hence which parts of which counts should be dismissed.

More importantly, the interaction of the FDCPA and the continuing violations doctrine in this Circuit is complex. Our Court of Appeals has explained that under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." <u>Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir. 1991). But ASC and Deutsche Bank cite <u>Schaffhauser v. Citibank (S.D.) N.A.</u>, 340 Fed. Appx. 128, 131 (3d Cir. 2009), in which our Court of Appeals explained that the plaintiffs had "offer[ed] no support for their contention that participation in ongoing debt collection litigation

qualifies as a 'continuing violation' of the FDCPA," so that the Court "decline[d] to extend the doctrine to the circumstances of this case."  More recently, in Peterson v. Portfolio Recovery Assocs., 430 Fed. Appx. 112, 115 (3d Cir. 2011), our Court of Appeals suggested that "[w]ithout commenting on any implications that § 1692g(a) claims, standing alone, might have for § 1692g(b) claims, we do not believe that the former are subject to a so-called 'continuing violations' rule."

Our Court of Appeals's jurisprudence thus suggests only that participation in debt collection litigation does not qualify as a continuing violation under the FDCPA; it does not hold that the continuing violations doctrine is inapplicable to all FDCPA claims.  To be sure, the Kimmels allege acts other than PHS's and Deutsche Bank's prosecution of the foreclosure actions within the one-year FDCPA limitations period.  But the parties have not briefed us on whether, based upon these or any other acts, the continuing violations doctrine might bring the Kimmels' FDCPA claims within the statute of limitations.  We decline to take up this analysis without further comment from the parties.

ASC and Deutsche Bank have focused their statute of limitations arguments on a narrow subset of the acts the Kimmels allege.  These defendants assert that (1) the Kimmels' claims

arise only from the mailing of notices to plaintiffs and the institution of actions against them in 2008 and 2009, and (2) the Kimmels could only conceivably toll the FDCPA's statute of limitations by making the legally insupportable claim that the continuing violations doctrine applies to the prosecution of a foreclosure action.  But these arguments fail to consider the full breadth of the Kimmels' complaint.  We also note that the parties have not briefed us in any way on how the continuing violations doctrine might apply to the Kimmels' FCEUA, fraud, and negligent misrepresentation claims.  Given the incomplete nature of the briefing we have received, we will not at this time dismiss any of the Kimmels' claims based on the applicable statutes of limitations.

### C.  **Plaintiffs' Failure To State a Claim Under The FDCPA**

Deutsche Bank and ASC also assert that the Kimmels' FDCPA claims should be dismissed for failure to state a claim. They advance two grounds: (1) "the Kimmels have failed to plead the requisite facts to establish that the debt at issue qualifies as a debt under the FDCPA," Deutsche/ASC's Mem. at 16; and (2) "Plaintiffs have failed to allege requisite elements . . . and the requisite facts to support those claims."  Id. at 29.

With respect to the first argument, Deutsche Bank and
ASC contend that to plead a claim under the FDCPA, "a debtor must
aver that the debt is one that arises out of a consumer
transaction 'in which the money, property, insurance, or services
which are the subject of the transaction are primarily for
personal, family, or household purposes, whether or not such
obligation has been reduced to judgment.'"  Id. at 16 (quoting
Kimmel v. Cavalry Portfolio Servs., LLC, 2011 WL 2039049, at *2
(E.D. Pa. 2011) (Buckwalter, J.) (quoting 15 U.S.C. § 1692a(5))).

It is true that nowhere in their complaint do the
Kimmels concretely[12] allege that the obligation which defendants
sought to collect qualified as "debt" under the FDCPA.  In fact,
although they allege that defendants "attempted to collect a debt
allegedly owed on a Mortgage and Note held by WMC Mortgage Co.
('WMC') for a property located at 4609 Harbor Beach Blvd.
Brigantine, New Jersey, 08203," Pls.' Compl. ¶ 13, the Kimmels
never explain their own relationship to this property other than
to allege that ASC's October 19, 2008 notice "list[ed] the

_____

[12] As we have already observed, the Kimmels assert in
conclusory fashion that the defendants "sought to collect a
consumer debt" from them.  Id. ¶ 11.

address of Plaintiffs' property in Brigantine, New Jersey." <u>Id.</u>
¶ 40.

> The Kimmels do aver in their briefs that
>
> > [T]he mortgage for the property in
> > Brigantine, New Jersey appears only to have
> > one purpose based on the substance of the
> > transaction and the borrower's purpose in
> > obtaining the loan.  This purpose was to
> > finance the purchase of a vacation home for
> > the Kimmels in Brigantine. . . . Plaintiffs
> > were clearly restricted from using the
> > property as a rental or a timeshare by the
> > Second Home Rider, and rental and timeshare
> > are the only practical business uses of a
> > property located in a residential
> > neighborhood.

Pls.' Mem. II at 22-23 (citing Ex. G to Pls.' Compl. at 25-26).

We may consider the "Second Home Rider" to which the Kimmels

refer as a document of undisputed authenticity upon which they

relied (if implicitly) in their complaint.  It provides that

> Borrower shall occupy, and shall only use,
> the Property as Borrower's second home.
> Borrower shall keep the Property available
> for Borrower's exclusive use and enjoyment at
> all times, and shall not subject the Property
> to any timesharing or other shared ownership
> arrangement or to any rental pool or
> agreement that requires Borrower either to
> rent the Property or give a management firm
> or any other person any control over the
> occupancy or use of the Property.

Ex. G to Pls.' Compl. at 25.  Murray M. Kimmel (and his counsel)

have made this type of argument before, contending in <u>Kimmel</u>,

2011 WL 2039049, at *3, that "the restrictions contained in the credit card agreement are evidence of his purpose -- rather than the lender's purpose."  Judge Buckwalter rejected that argument, explaining that "the terms of the agreement and the manner in which the card was actually used are two separate issues," id. at *4.  We similarly conclude that the terms of the Second Home Rider and the use to which the property in Brigantine, New Jersey was actually put are distinct from one another.

As the complaint currently stands, it fails to allege that the obligation at issue here was a "debt" within the FDCPA's ambit.  We will accordingly grant Deutsche Bank and ASC's motion to dismiss Count I.  Were the Kimmels to amend their complaint to allege that they used this property exclusively as a vacation home, they would satisfy this element of the FDCPA for pleading purposes.  We will grant them leave to do so.

Such amendment would only address the complaint's deficiency with respect to pleading the nature of the underlying obligation, however.  Regarding Deutsche Bank and ASC's second argument -- that the Kimmels have failed adequately to allege a violation of the FDCPA -- the Kimmels respond that they "have properly alleged the requisite elements of each of their causes of action and the requisite facts to support those claims."

37

Pls.' Mem. II at 40.  It is true that the Kimmels' complaint does not present the usual deficiencies that often prompt dismissal under Iqbal and Twombly.  Many of their factual allegations are concrete, rather than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.  But the Kimmels simply recite an array of factual allegations and then declaim that "[i]n its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways," Pls.' Compl. ¶ 86, before listing eleven provisions of the FDCPA that defendants allegedly violated.[13]

     As our Court of Appeals has explained, a plaintiff must "provide a defendant the type of notice of claim which is contemplated by Rule 8," Phillips, 515 F.3d at 232.  A plaintiff does not meet this requirement by propounding a mass of factual allegations and then enumerating a laundry list of statutory provisions that a defendant allegedly violated.  Should the Kimmels elect to amend their complaint, they must link each alleged violation of the FDCPA to the predicate factual

_____

[13] The Kimmels add the allegation that defendants "act[ed] in an otherwise deceptive, unfair and unconscionable manner and fail[ed] to comply with the FDCPA," Pls.' Compl. ¶ 86(l).  This only increases the indeterminacy of their complaint.

allegations giving rise to the violation in order to state a claim under Fed. R. Civ. P. 8.

**D.    The Kimmels' Failure To Plead Justifiable Reliance**

Finally, Deutsche Bank and ASC claim that "Plaintiffs' claims for violation of the Pennsylvania UTPCPL, fraud and negligent misrepresentation should be dismissed for failure to allege justifiable reliance," Deutsche/ASC's Mem. at 24, and that with respect to the Kimmels' RICO claims[14] they "have failed to allege any facts upon which they relied let alone justifiably." Id. at 27.  The Kimmels respond that

> Plaintiffs have been able to successfully
> allege facts that show that they justifiably
> relied on the material misrepresentations.
> In particular, Plaintiffs have stated that
> they became confused by the varying amounts
> set forth for securing the property in
> Defendants' correspondence and pleadings, and
> that Plaintiffs also were unaware of what
> these amounts were billed for as Defendants

------

[14] Though the Kimmels' complaint suggests that they predicate their 18 U.S.C. § 1962(c) claim upon "numerous violations of extortion, mail fraud," Pls.' Compl. ¶ 114(a), they clarify in their response to Deutsche Bank and ASC's motion that "the racketeering activity' [sic] at issue here is mail fraud." Pls.' Mem. II at 37.  Similarly, although the complaint appears to allege a claim under § 1962(d) for "conspiring to violate any provisions of 18 U.S.C. § 1962," Pls.' Compl. ¶ 114(b), the Kimmels admit that they "have not specific plead [sic] violations of § 1962(d) in their Complaint, and instead have only enumerated violations under § 1962(c)."  Pls.' Mem. II at 39.

> provided no explanation.  Furthermore,
> Plaintiffs have also averred that they were
> so confused as to what the state complaints
> at issue actually stated about the amount
> owed, due to these misrepresentations in the
> documents, that they had to hire counsel to
> help them understand the documents.

Pls.' Mem. II at 38 (internal citations omitted).

There can be little doubt that the Kimmels' UTPCPL, fraud, and negligent misrepresentation claims oblige them to allege justifiable reliance upon wrongful conduct or a misrepresentation.  Indeed, the Kimmels concede this point.  See Pls.' Mem. II at 28 (describing justifiable reliance element of UTPCPL claim), id. at 32 (describing justifiable reliance prong of common law fraud claim), id. at 34 (describing justifiable reliance requirement of negligent misrepresentation claim).  See also Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation."); Colaizzi v. Beck, 895 A.2d 36, 39 (Pa. Super. 2006) ("[T]o establish common law fraud, a plaintiff must prove . . . justifiable reliance by the party defrauded upon the misrepresentation."); Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994) ("The elements which must be proven for [negligent misrepresentation] to be shown [include] .

40

. . . [that] injury must result to the party acting in justifiable reliance on the misrepresentation.").

As for RICO claims predicated upon alleged mail fraud, Judge Robreno has insightfully canvassed the caselaw from this and other Circuits on the proximate causation element of such claims.  As he observed, "[w]hether reliance is necessary to establish proximate cause continues to be unsettled law," but "the majority of circuit courts and district courts within this circuit to address the issue have held that it is."  Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 806 (E.D. Pa. 2007).  In Judge Robreno's view, this stance "gets it right" since "[i]t is a matter of basic logic that a misrepresentation cannot cause, much less proximately cause, injury, unless someone relies upon it."  Id. at 807 (internal quotations marks omitted).  We too are convinced that this is the correct view, and the Kimmels appear to agree.  Pls.' Mem. II at 37-38 ("[T]o plead an instance of mail fraud, a plaintiff must allege a scheme to defraud where the defendant made a material misrepresentation of fact . . . on which the plaintiff justifiably relied to its detriment.") (internal quotation marks omitted).

The Kimmels suggest that they have alleged justifiable reliance on defendants' alleged misrepresentations and wrongful

41

actions because they were confused by their conduct, which led

them to retain an attorney.[15]   But the Kimmels also admit that

"upon receipt of [the October 19, 2008] letter from Defendant

ASC, Plaintiffs grew very worried they were becoming the victims

of a scam," Pls.' Compl. ¶ 38.   They further allege that they

contested the foreclosure proceedings PHS and Deutsche Bank

instituted against them, and have to date convinced a New Jersey

court to deny a motion for summary judgment and to dismiss

without prejudice two actions filed against them.   The Kimmels'

complaint thus suggests that they understood -- from the receipt

of their very first communications from any of the defendants --

that what they identify as "misrepresentations" were indeed false

-- and as our Court of Appeals has made clear, "there can be no

misrepresentation if the plaintiff knows the representation to be

false."   Walter, 480 F. Supp. 2d at 808 (emphasis in original)

---

        [15] We note that each of the claims discussed in this
section also requires a plaintiff to allege that he suffered an
injury as a result of his justifiable reliance.   In the RICO
context, this injury must be "'a concrete financial loss.'"
Walter, 480 F. Supp. 2d at 804 (quoting Maio v. Aetna, Inc., 221
F.3d 472, 483 (3d Cir. 2000).   The hiring of counsel, by itself,
does not constitute an injury, although the payment of fees to an
attorney may satisfy this requirement.   See id. ("The payment of
legal fees can be actionable injuries under RICO.").   Notably,
the Kimmels have not alleged that they paid any fees -- or indeed
are even obliged to pay any -- to the counsel that their
confusion allegedly compelled them to retain.

(citing <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 528-29 (3d Cir. 1998); <u>Lundy v. Hochberg</u>, 79 Fed. Appx. 503 (3d Cir. 2003)).  More to the point, the Kimmels' conduct following the defendants' allegedly wrongful actions was, in Judge Robreno's trenchant words, "the opposite of reliance; it's defiance.  After being (falsely) told they were liable on the debt, they hired lawyers and fought (and won) the lawsuits."  <u>Id.</u> at 806.

While "confusion" may describe the emotion the Kimmels <u>felt</u> upon receiving communications from the defendants, it does not describe what they then <u>did</u>.  Their actions are the focus of the "justifiable reliance" prongs of the UTPCPL, RICO, and the law of fraud and negligent misrepresentation.  When we focus on the Kimmels' documented <u>actions</u> it becomes plain that, far from relying on the defendants' alleged misrepresentations and wrongful conduct, they instead contested these representations in court, so far with success.

The Kimmels have thus failed to allege justifiable reliance as their UTPCPL, RICO, fraud, and negligent misrepresentation claims require.  In light of their own account of their actions, it is clear that it would be futile for them to attempt to amend the complaint to remedy this defect.  We will

43

thus grant Deutsche Bank and ASC's motion to dismiss Counts III,

IV, V, and VI of the Kimmels' complaint with prejudice.


                            BY THE COURT:

                            __\s\Stewart Dalzell